C. C. WIMBISH, ADMINISTRATOR, CLAIMANT FOR CHARLES C. WIMBISH, JR., DECEASED EMPLOYEE, v. HOME DETECTIVE COMPANY, INCORPORATED, EMPLOYER, AND MARYLAND CASUALTY COMPANY, CARRIER.

(Filed 15 June, 1932.)

**Master and Servant F i—Findings of fact of Industrial Commission on conflicting evidence are conclusive on appeal.**

In this case *Held:* the evidence as to whether the accident resulting in the death of an employee arose out of and in the course of his employment was conflicting, and the finding of the full Industrial Commission in a hearing before it that the accident did not arise out of and in the course of the employment is binding and conclusive on the courts upon appeal.

CIVIL ACTION, before *Warlick, J.*, at November Term, 1931, of GUILFORD.

This cause was first considered by the Industrial Commission and an award made by the hearing commissioner. Upon appeal to the full Commission the award was vacated for the reason that the full Commission found that the accident and death of claimant did not arise out of and in the course of the employment. Thereupon the plaintiff appealed to the Superior Court, and after considering the record the trial judge was of the opinion that the decision of the Industrial Commission should be affirmed.

The evidence may be summarized as follows: C. C. Wimbish, Jr., was employed by the defendant, Home Detective Company, to perform "clerical work in the office and going out on such missions as the manager of that company saw fit to send him on, covering such matters as the handling of collections, bad check items and conducting such investigations for this company as we found from time to time he was best suited to conduct." He interviewed clients, prospective as well as

present, discussing with them matters in general pertaining to the handling of accounts and bad check investigations. In the performance of his duties he used his own automobile, but the company paid for the gas and oil and repairs while used in its service.

On the night of 5 June the deceased telephoned a young lady in Greensboro with reference to a trip from Greensboro to Raleigh. The contents and meaning of the conversation can be more accurately disclosed by using the words of the witness: (Q.) "How did Mr. Wimbish know you wanted to attend the dances?" (A.) "Because we had spoken of it. I expressed a desire that I wished to go and that I wished I had a ride." (Q.) "He volunteered to take you?" (A.) "He did not know I was going until the night before. He called me up and said he was going and wanted to know if I would like to go, and I said 'Yes, I certainly would.'" (Q.) "Did he say he was going to the dance or just going to Raleigh?" (A.) "He didn't say." (Q.) "It is stated you were going to attend the finals or dances on this trip?" (A.) "I was." (Q.) "Where else were you going on this trip?" (A.) "I was going to return to Greensboro Saturday to attend the last day's exercises." (Q.) "Was he bringing you back to Greensboro?" (A.) "He was." (Q.) "Do you know whether or not Mr. C. C. Wimbish was going to that dance?" (A.) "I do not. I understood he might go if he could get a date." The dance was to take place in Raleigh at about nine o'clock on the night of 6 June. On the morning of 6 June the deceased was in the office of his employer in Greensboro prior to ten or eleven o'clock. The general manager of defendant corporation testified that when the deceased came to the office on the morning of 6 June that he had arranged an itinerary for the deceased which required him to visit certain parties in Clayton, Clinton, Durham and Raleigh, and that the deceased was directed by said manager to call upon various persons in these cities. The deceased and the young lady left Greensboro about 12:30 or quarter to one on 6 June. They stopped at Burlington in order for the young lady to communicate with her sister living at that point. Another stop was made in Hillsboro for food. Apparently no stop was made at Durham. A short distance beyond Durham the deceased in some way lost control of the car and it hit an embankment, and as a result the deceased was killed. In the pockets of the car there were certain papers relating to the business of the company, including contract blanks and office file. The suit case of deceased was also in the car, containing wearing apparel and toilet articles. In this suit case was a dress suit. The deceased had not spent a night away from home on business for the company. He always returned to Greensboro at night. The deceased met his death at about 4:30 in the afternoon of 6 June.

It also appeared from the evidence that Clayton, Benson and Clinton are beyond Raleigh.

From the judgment affirming the award of the Industrial Commission the plaintiff appealed.

*H. R. Stanley for plaintiff.*
*W. C. Ginter and R. M. Robinson for defendant.*

BROGDEN, J. Was the deceased at the time of his death on 6 June engaged in the course of employment of the defendant, or was he making the trip to Raleigh with a young lady in order to attend a dance in Raleigh that night?

The Industrial Commission found "that the accident and death of the claimant did not arise out of and in the course of the employment." "The findings of fact made by the North Carolina Industrial Commission, in a proceeding pending before the said Commission, are conclusive on an appeal from said Commission to the Superior Court, only when there was evidence before the Commission tending to show that the facts are as found by the Commission. Otherwise, the findings are not conclusive, and the Superior Court, on an appeal from the award of the Commission, has jurisdiction to review all the evidence for the purpose of determining whether as a matter of law there was any evidence tending to support the finding by the Commission." *Dependents of Poole v. Sigmon, ante,* 172. The last utterance by this Court upon the question involved appears in *Greer v. Laundry Co., ante,* 729. The Court said: "In the instant case, it may be conceded that there was evidence tending to show that plaintiff had suffered an injury by accident arising out of and in the course of his employment, resulting in the loss of an eye. However, there was also evidence tending to show that the loss of plaintiff's eye was not the result of an accident but of a disease which was not caused or aggravated by the accident which arose out of or in the course of his employment. The conflicting evidence was considered by both Commissioner Dorsett and by the full Commission. The findings of fact made by Commissioner Dorsett and approved by the full Commission were conclusive and binding on the judge of the Superior Court."

So, in the case at bar the evidence was conflicting and more than one inference could be drawn therefrom by a fair and impartial mind. Consequently the trial judge ruled correctly.

Affirmed.